PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (*pro hac vice* pending)
John A. Morris (*pro hac vice* pending)
Gregory V. Demo (*pro hac vice* pending)
Hayley R. Winograd (*pro hac vice* pending)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 7 |
| HIGHLAND SELECT EQUITY MASTER FUND, L.P., | ) ) ) ) | Case No. 23-31037-swe7 |
| Debtor. | ) ) | |

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S RESPONSE AND JOINDER TO
MOTION TO TRANSFER/REASSIGN CASE**

Highland Capital Management, L.P. ("HCMLP"), a creditor and party-in-interest in the above-referenced bankruptcy case, by and through its undersigned counsel, hereby files its response to *Creditor The Dugaboy Investment Trust's Objection to Debtor's Motion to Transfer* [Docket No. 17] and joinder to *Debtor's Motion to Transfer/Reassign Case* [Docket No. 9] (the "Motion") filed by Highland Select Equity Master Fund, L.P. (the "Select Fund") and Highland Select Equity Fund GP, L.P. ("Select GP," and together with the Select Fund, the "Debtors"). In

support of thereof, HCMLP adopts the legal arguments and authorities in the Motion and respectfully states as follows:

## PRELIMINARY STATEMENT[1]

1. The Debtors' cases are directly related to and intertwined with the HCMLP Case and should therefore be re-assigned to Judge Jernigan, the judge who has overseen the HCMLP Case since it was transferred to her court in December 2019.

2. HCMLP is one of the Debtors' two creditors. It is indisputable that HCMLP is indirectly the sole limited partner of the Select Fund and owner of Select GP and that the Debtors act through HCMLP. The Debtors' only other purported creditor is Dugaboy, James Dondero's family trust which he controls and of which he is the lifetime beneficiary.

3. Regrettably, Dugaboy has intimated that it intends to investigate (and then pursue) baseless claims against HCMLP, its court-appointed CEO, James P. Seery, Jr., and its other employees arising from acts occurring during the HCMLP Case. While any such investigation (let alone the pursuit of claims) would be a waste of resources, the mere possibility of such an investigation mandates re-assignment of the Debtors' cases to Judge Jernigan because:

- Any such claims would relate to conduct that occurred during the HCMLP Case and was (and still is) subject to Judge Jernigan's oversight;

- Judge Jernigan is thoroughly familiar with provisions of HCMLP's confirmed Plan that will likely apply here, including the discharge and gatekeeper provisions, as well as other applicable orders and deadlines in the HCMLP Case such as the Admin Bar Date; and

- If Dugaboy ever pursues claims against HCMLP or its employees (including Mr. Seery) for conduct arising during the HCMLP Case, Dugaboy would be required pursuant to various "gatekeeper" orders to obtain Judge Jernigan's approval before commencing suit.

4. If these facts were not enough—and they are—Dugaboy previously admitted that any purported claim it has against HCMLP for acts concerning the Debtors must be raised in the

---

[1] All capitalized terms used, but not defined, in this Preliminary Statement have the meanings given to them below.

HCMLP Case. In April 2020, Dugaboy filed a proof of claim in the HCMLP Case seeking to hold HCMLP liable for the Debtors' alleged obligations to Dugaboy. In response to HCMLP's objection to Dugaboy's claim, Dugaboy acknowledged that HCMLP's "Plan, as part of the gatekeeper provision in the Plan, vests exclusive jurisdiction of the claim of Dugaboy against" the Select Fund in Judge Jernigan's court. HCMLP Case Docket No. 2933 ¶ 5. Notably, Judge Jernigan ultimately disallowed Dugaboy's claim against HCMLP arising from its management of the Debtors with prejudice—thereby raising even more issues of judicial estoppel, collateral estoppel, and *res judicata*.

5. Separately, Mr. Dondero, through yet another controlled shell entity (*i.e.*, PCMG), commenced an action against HCMLP (this time, in the District Court) for alleged mismanagement of the Debtors. After the matter was referred to the Bankruptcy Court and HCMLP moved to dismiss, PCMG stipulated to the dismissal of the adversary proceeding with prejudice.

6. Regrettably, HCMLP believes that Dugaboy (and Mr. Dondero) will attempt to use the Debtors' bankruptcy cases as the latest vehicle to pursue baseless claims against HCMLP and its management and employees—even though any purported claims are barred for myriad reasons and would be subject to the Gatekeeper in HCMLP's Plan in any event. Such suits will indisputably affect HCMLP's bankruptcy estate and implicate the terms of HCMLP's Plan. Judicial economy therefore favors re-assigning these cases to Judge Jernigan as she will be involved in their management under any circumstances.

7. Despite the foregoing, Dugaboy has objected to re-assignment. The objection is ill-founded. The connections between these cases and the HCMLP Case are stark, indisputable, and dispositive. But Dugaboy objects to transfer solely because it dislikes Judge Jernigan, not because she is "biased" as they claim but because she understands Mr. Dondero's games—

3

litigation as harassment. That is what is going on here. In fact, HCMLP offered to waive its claim against the Debtors and allow Dugaboy, the Debtors' only other creditor, to have all of the Debtors' cash and investments to resolve these cases, after payment of estate expenses. Dugaboy never responded to HCMLP's offer (reiterated on the record before Judge Jernigan) but chose instead to propound more litigation.

## JOINDER

### I. Background to the Select Fund

8. The Select Fund is a Bermuda-based limited partnership that is managed by its general partner, Select GP. HCMLP is indirectly the sole limited partner of the Select Fund[2] and the owner of Select GP. The Select Fund's former investment manager was HCMLP. Prior to the filings, the Debtors had no employees and could act only through HCMLP.

9. Prior to HCMLP's bankruptcy in October 2019, James Dondero, a founder of HCMLP and its former Chief Executive Officer, controlled the Select Fund, Select GP, HCMLP, and Dugaboy.

10. Historically, the Select Fund had one asset: a prime brokerage account with Jefferies, which held a portfolio of liquid and illiquid securities (the "Jefferies Account"). The Select Fund was managed by HCMLP, then under the control of Mr. Dondero, and securities would be bought and sold in the Jefferies Account at Mr. Dondero's direction. Mr. Dondero also directed the Select Fund to borrow money from Jefferies on margin. The loans Mr. Dondero obtained from Jefferies were secured by the securities in the Jefferies Account and the proceeds were used to

---

[2] The Select Fund has one limited partner: Highland Select Equity Fund, L.P. ("Equity Fund"). Equity Fund is 100% owned by the Highland Claimant Trust. Prior to February 2021, PCMG Trading Partners XXIII, L.P. ("PCMG"), held a 0.024% limited partnership interest in Equity Fund. PCMG's limited partners are Mr. Dondero and Mark Okada, HCMLP's co-founder. Mr. Dondero holds 75% of PCMG's limited partnership interest and Mr. Okada holds the remainder. PCMG's general partner is Strand Advisors III, Inc., which is 100% owned and controlled by Mr. Dondero. PCMG's interest in Equity Fund was redeemed for cash in February 2021.

4

purchase more securities, which in turn were pledged to Jefferies. Mr. Dondero historically caused the Select Fund to borrow as much as was allowed against the securities in the Jefferies Account.

11. The Debtors have two creditors. HCMLP loaned the Select Fund $3 million (with the consent of the Committee) in March 2020 (the "HCMLP Loan") with the proceeds being used to fund a margin call from Jefferies.[3] The Debtors only other alleged creditor is The Dugaboy Investment Trust ("Dugaboy"). Dugaboy is Mr. Dondero's family trust of which Mr. Dondero is the lifetime beneficiary that previously held a 0.1866% limited partnership interest in HCMLP. Dugaboy's claim against the Debtors arises from a master securities lending agreement pursuant to which Dugaboy loaned the Select Fund certain equity securities (the "Loan Share Agreement"), which Mr. Dondero caused to be contributed to the Jefferies Account to allow Mr. Dondero to meet a then-outstanding margin call in October 2014.

## II. HCMLP's Bankruptcy; Liquidation of the Jefferies Account

12. On October 16, 2019 (the "HCMLP Petition Date"), HCMLP filed for bankruptcy protection in the U.S. Bankruptcy Court for the District of Delaware (the "HCMLP Case").[4] At the request of HCMLP's creditors, the HCMLP Case was transferred to the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"), to be overseen by The Honorable Stacey Jernigan, in large part because of her familiarity with Mr. Dondero and certain of the entities he then controlled.[5]

---

[3] In May 2022, the Select Fund paid HCMLP approximately $363,000 on the HCMLP Loan, which represented HCMLP's *pro rata* share of the Select Fund's assets after setting an expense reserve of $100,000 and, assuming no default interest on the HCMLP Loan, leaving approximately $639,000 in cash at Select Fund.

[4] The HCMLP Case is styled as *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11.

[5] Judge Jernigan's familiarity with Mr. Dondero came from her presiding over *In re Acis Capital Management, L.P.*, Case No. 18-30264-sgj-11 (Bankr. N.D. Tex.). Acis Capital Management, L.P., was a former HCMLP subsidiary, which was put into an involuntary bankruptcy after Mr. Dondero refused to pay an $8 million arbitration award to a former employee and instead chose to strip Acis of assets to make it judgment proof. *Acis* was marked by extremely acrimonious litigation brought by Mr. Dondero against his former employee through a series of controlled proxies. *See, e.g.*, *In re Acis Cap. Mgmt., L.P.*, 2019 Bankr. LEXIS 292 (Bankr. N.D. Tex. Jan. 31, 2019); *In re Acis Cap. Mgmt., L.P.*, 584 B.R. 115 (Bankr. N.D. Tex. Apr. 13, 2018).

5

13. As of the month end prior to the HCMLP Petition Date, the Select Fund held approximately $171 million in long equity positions and $41 million of short equity positions in the Jefferies Account; had pledged those securities to secure $119 million in loans from Jefferies; and owed $1.1 million on an outstanding margin call in the Jefferies Account.

14. After HCMLP's creditors and the U.S. Trustee raised concerns about Mr. Dondero's ability to serve as an estate fiduciary because of his history of self-dealing, creditor-avoidance asset transfers, and other breaches of fiduciary duty, HCMLP, its official committee of unsecured creditors (the "Committee"), and Mr. Dondero entered into a settlement intended to avoid the appointment of a chapter 11 trustee. The settlement was approved by Judge Jernigan on January 9, 2020 [HCMLP Case Docket No. 339] (the "January Order").[6] Pursuant to the January Order:

- Mr. Dondero was removed from control of HCMLP and an independent board was appointed (the "Independent Board");[7] Mr. Dondero, however, remained an unpaid Highland portfolio manager.

- A "gatekeeper" provision was instituted prohibiting the pursuit or commencement of litigation against the Independent Directors without Judge Jernigan's prior authorization and limiting claims to those arising from willful misconduct or gross negligence.[8]

- A series of operating protocols were enacted which required HCMLP to seek Committee approval (and in some instances court approval) prior to entering into nearly any transaction, including transactions in the Jefferies Account [HCMLP Case Docket Nos. 354; 466] (the "Operating Protocols").

---

[6] Notwithstanding the January Order, the U.S. Trustee still pressed for the appointment of a chapter 11 trustee. [HCMLP Case Docket No. 271].

[7] The Independent Board was comprised of retired bankruptcy judge Russell Nelms, John Dubel, and James P. Seery, Jr. (the "Independent Directors").

[8] January Order ¶ 10 ("No entity may commence or pursue a claim or cause of action of any kind against any Independent Director . . . relating in any way to the Independent Director's role as an independent director ... without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Independent Director ...."). On July 16, 2020, Judge Jernigan approved Mr. Seery's appointment as HCMLP's chief executive officer and chief restructuring officer [HCMLP Case Docket No. 854] (the "July Order"). Like the January Order, the July Order prohibited litigation against Mr. Seery without Judge Jernigan's prior authorization and limited claims to those arising from willful misconduct or gross negligence. July Order ¶ 5.

6

15. During the fourth quarter of 2019 and first quarter of 2020, the Jefferies Account was often in margin deficit with the Select Fund (then managed by Mr. Dondero), routinely pushing back on requests to meet margin calls. In the first and second quarters of 2020, the margin shortfalls became much more acute as the world economy experienced global-pandemic-induced economic distress causing the market, including the value of the securities in the Jefferies Account, to plummet. The decline in value quickly eroded the equity in the Jefferies Account and caused a default allowing Jefferies to seize the Jefferies Account and liquidate essentially all the Select Fund's assets—including any securities allegedly loaned to the Select Fund by Dugaboy—to cover the amounts owed to Jefferies.

16. By June 30, 2020, Jefferies had substantially liquidated the Jefferies Account to repay Select Fund's loan, leaving the Jefferies Account with *de minimis* cash and illiquid investments.

### III. Mr. Dondero's Attempts to "Burn [Highland] Down" and the Gatekeeper

17. In the fall of 2020, with the Committee refusing to capitulate to his demands, Mr. Dondero and his controlled entities, like Dugaboy, began interfering with HCMLP's management, threatening HCMLP's employees, and threatening to "burn [HCMLP] down."[9] Mr. Dondero's actions led Judge Jernigan to issue a temporary restraining order (the "TRO") against him,[10] which he promptly violated.[11]

---

[9] Confirmation Order (defined below), ¶¶ 74(b); 78.

[10] *Highland Cap. Mgmt., L.P. v. Dondero*, Adv. Pro. No. 20-03190-sgj, Docket No. 10 (Bankr. N.D. Tex. Dec. 10, 2020).

[11] Mr. Dondero was held in contempt for violating the TRO. *Highland Cap. Mgmt., L.P. v. Dondero (In re Highland Cap. Mgmt., L.P.)*, 2021 Bankr. LEXIS 1533 (Bankr. N.D. Tex. Jun. 7, 2021), *aff'd* 3:21-cv-01590-N, Docket No. 42 (N.D. Tex. Aug. 17, 2022).

18. On February 22, 2021, Judge Jernigan entered the Confirmation Order[12] confirming HCMLP's Plan.[13] HCMLP's Plan included a gatekeeper provision (the "Gatekeeper")[14] prohibiting "Enjoined Parties," like Dugaboy and Mr. Dondero, from bringing claims against "Protected Parties," like HCMLP and its employees and management, unless Judge Jernigan first determines the claims to be "colorable." The Gatekeeper was adopted (i) as a direct result of Mr. Dondero's history of harassing and costly litigation[15] and (ii) to prevent harassment of HCMLP's estate and abuse of judicial resources.[16]

19. Judge Jernigan also found, as a matter of fact, that Dugaboy and approximately 40 other entities were "marching pursuant to the orders of Mr. Dondero"[17] and objecting to the Plan, not to protect economic interests, but "to be disruptors."[18]

20. In addition to the Gatekeeper and numerous factual findings concerning Mr. Dondero's use of proxies to harass HCMLP, the Plan also included:

- A discharge of HCMLP under 11 U.S.C. § 1141(d)(1)(A) (Plan, Art. IX.B);

- An injunction prohibiting "Enjoined Parties," like Dugaboy, from pursuing claims against HCMLP or that affect its property, among other enjoined actions (*id.*, Art. IX.F);

---

[12] "Confirmation Order" refers to the *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [HCMLP Case Docket No. 1943].

[13] "Plan" refers to the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [HCMLP Case Docket No. 1808].

[14] Plan, Art. IX.F.

[15] Confirmation Order, ¶ 77 ("During the last several months, Mr. Dondero and the Dondero Related Entities [including Dugaboy] have harassed [HCMLP], which has resulted in further substantial, costly, and time-consuming litigation for the Debtor.").

[16] *Id.*, ¶ 79 ("Approval of **the Gatekeeper Provision will prevent baseless litigation** designed merely to harass the post-confirmation entities charged with monetizing the Debtor's assets for the benefit of its economic constituents, will **avoid abuse of the Court system and preempt abuse of judicial time** that properly could be used to consider the meritorious claims of other litigants.") (emphasis added).

[17] *See, e.g., id.* ¶ 19

[18] *See, e.g., id.* ¶ 17

8

- An exculpation provision limiting claims against Mr. Seery, in his role as an Independent Director, to those arising "from willful misconduct, criminal misconduct, or gross negligence" (*id.*, Art. IV.D); and

- An administrative bar date (the "Admin Bar Date") requiring all administrative claims against HCMLP to have been filed in the HCMLP Case by September 25, 2021 (*id.*, Art. II.A).

HCMLP's Plan, including the Gatekeeper, became effective on August 11, 2021. [HCMLP Case Docket No. 2700].

21. The Confirmation Order, including the Gatekeeper, was affirmed in all relevant respects by the Fifth Circuit. *NexPoint Advisors L.P. v. Highland Cap. Mgmt., L.P.* (*In re Highland Cap. Mgmt., L.P.*), 48 F.4th 419, 425–26, 435–39 (5th Cir. 2022). The factual findings in the Confirmation Order regarding Mr. Dondero's direct and indirect harassment of HCMLP were not challenged or disturbed on appeal.

### IV. Mr. Dondero's (and Dugaboy's) Continued Efforts to Harass HCMLP

22. Notwithstanding the Plan, the Gatekeeper, and two orders holding him in contempt of court,[19] Mr. Dondero has not been cowed and, with his controlled entities, is currently involved in 30 proceedings against or affecting HCMLP—but those proceedings are a fraction of the litigation compounded against HCMLP, its estate, and its management by Mr. Dondero. The docket in the HCMLP Case contains nearly 3,900 entries; over 15 adversary proceedings have been filed by or against Mr. Dondero and his controlled affiliates; and Mr. Dondero and his controlled affiliates have filed over 25 appeals from Bankruptcy Court orders. Mr. Dondero's

---

[19] Mr. Dondero was held in contempt for violating the TRO (*see* n.11 *supra*). Separately, Mr. Dondero, entities he controls, and others were subsequently held in contempt for violating the gatekeeper provision in the July Order by pursuing claims against Mr. Seery without Judge Jernigan's authorization. *Charitable DAF Fund LP v. Highland Cap. Mgmt., LP*, 2021 Bankr. LEXIS 2074 (Bankr. N.D. Tex. Aug. 3, 2021), *aff'd* 2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022).

efforts to harass HCMLP also include numerous efforts to litigate matters appropriately in front of Judge Jernigan in other courts[20] and four motions to recuse Judge Jernigan.

23. Dugaboy has been an active participant in Mr. Dondero's harassment. Dugaboy joined in each motion to recuse and is currently the protagonist in seven pending actions and appeals against HCMLP.

24. Mr. Dondero's and Dugaboy's harassment of HCMLP and its affiliates and employees forced HCMLP to file a motion in the U.S. District Court for the Northern District of Texas (the "District Court") seeking an order (a) declaring Mr. Dondero, Dugaboy, and other entities controlled by Mr. Dondero "vexatious litigants," (b) enjoining them from commencing or pursuing any claim or cause of action in the District Court or the Bankruptcy Court without written permission, and (c) requiring them to file a copy of order finding them vexatious in any pending or future litigation or proceeding.[21]

25. Of particular relevance here, Mr. Dondero (through proxies, including Dugaboy) has twice attempted to pursue claims against HCMLP for its management of the Select Fund during the HCMLP Case.

26. **Dugaboy's Proof of Claim.** In April 2020, Dugaboy filed a proof of claim in the HCMLP Case (Proof of Claim #131) for $4 million alleging that HCMLP was somehow liable to Dugaboy because of the Select Fund's alleged failure to comply with the Loan Share Agreement. After HCMLP incurred the time and cost of objecting to Dugaboy's claim, Dugaboy withdrew it

---

[20] *Charitable DAF Fund, L.P., et al v. Highland Cap. Mgmt., L.P., et al*, Case No. 21-cv-0842-B (N.D. Tex. Apr. 12, 2021); *PCMG Trading Partners XXII, L.P. v. Highland Cap. Mgmt., L.P.*, Case No. 21-cv-01169-N (N.D. Tex. May 21, 2021); *The Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*, Case No. 21-cv-01479-S (N.D. Tex. Jun. 23, 2021); *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*, Case No. 21-cv-01710-N (N.D. Tex. Jul. 22, 2021).

[21] *Highland Capital Management, L.P.'s Motion to Deem the Dondero Entities Vexatious Litigants and for Related Relief*, Case No. 3:21-cv-00881-X, Docket No. 136 (N.D. Tex. Jul. 14, 2023); *Highland Capital Management, L.P.'s Memorandum of Law in Support of Its Motion to Deem the Dondero Entities Vexatious Litigants and for Related Relief*, Case No. 3:21-cv-00881-X, Docket No. 137 (N.D. Tex. Jul. 14, 2023).

10

with prejudice. In withdrawing its claim, Dugaboy conceded that HCMLP's Plan "vests exclusive jurisdiction of the claim of Dugaboy against [Select Fund] in [Judge Jernigan's] Court." HCMLP Case Docket No. 2933 ¶ 5.

27. **PCMG Complaint.** In May 2021, PCMG—another entity controlled by Mr. Dondero (*see* n.2 *supra*)—sued HCMLP in the District Court for breach of fiduciary duty because of HCMLP's alleged mismanagement of the Select Fund.[22] PCMG never served HCMLP with its complaint but instead obtained an *ex parte* stay.[23] HCMLP subsequently moved for reconsideration of the stay order,[24] and the District Court lifted the stay and referred the complaint to Judge Jernigan as a matter related to the HCMLP Case.[25] HCMLP subsequently moved to dismiss the complaint for failure to comply with the Admin Bar Date.[26] After forcing HCMLP to incur substantial costs, PCMG consented to the dismissal of its complaint with prejudice.

28. After Mr. Dondero's efforts to sue HCMLP over the Select Fund failed, Dugaboy filed suit against the Debtors in the U.S. District Court for the Southern District of New York (the "New York Action").[27] The New York Action is the sole reason the Debtors filed these cases. To avoid the costs of these cases, HCMLP offered to waive the balance of the HCMLP Loan and allow Dugaboy to take all remaining cash and investments at Select Fund in complete settlement of all parties' claims. To date, Dugaboy has not responded to that offer.

---

[22] *PCMG Trading Partners XXII, L.P. v. Highland Cap. Mgmt., L.P.*, Case No. 21-cv-01169-N, Docket No. 1 (N.D. Tex. May 21, 2021).
[23] *Id.*, Docket No. 6.
[24] *Id.*, Docket No. 8.
[25] *Id.*, Docket No. 19.
[26] *PCMG Trading Partners XXIII, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, Adv. Proc. No. 22-03062-sgj, Docket No. 20 (Bankr. N.D. Tex. Jun. 16, 2022).
[27] *The Dugaboy Inv. Tr. v. Highland Select Equity Master Fund, L.P., et al*, Case No. 23-cv-01636 (S.D.N.Y. Feb. 27, 2023).

V.     **Dugaboy's Objection to Re-Assignment**

29.    Not surprisingly, Dugaboy has objected to re-assignment of these cases to Judge Jernigan [Docket No. 17] and, in doing so, ignores the reality of the HCMLP Case. Any investigation into these cases will involve conduct that occurred during, and as part of, the HCMLP Case and, among other things, will require analysis and application of the Gatekeeper, the January and July Orders, the Admin Bar Date, and HCMLP's Plan's discharge and exculpation provisions. Dugaboy cannot alter these indisputable realities nor preclude Judge Jernigan's necessary involvement in the management of these cases by alleging "bias."

30.    But, importantly, Dugaboy's allegations of bias are unfounded. Judge Jernigan has ruled—many times—against Dugaboy and Mr. Dondero and made detailed factual findings about Mr. Dondero and his controlled affiliates. The driver of those rulings, however, was Mr. Dondero's conduct, not Judge Jernigan's "bias." Nearly every one of Judge Jernigan's rulings has been affirmed on appeal by the District Court and then by the Fifth Circuit. None of Judge Jernigan's factual findings have been overturned, notwithstanding Mr. Dondero's efforts. Mr. Dondero obviously dislikes Judge Jernigan's decisions, but they are not evidence of Judge Jernigan's bias; they are evidence of Mr. Dondero's vexatiousness.

31.    Judge Jernigan made this clear in her two detailed rulings denying Mr. Dondero's many motions to recuse her. *In re Highland Cap. Mgmt., L.P.*, Case No. 19-30454-sgj11, Docket No. 2803 (Bankr. N.D. Tex. Mar. 22, 2021); *In re Highland Cap. Mgmt., L.P.*, 2023 Bankr. LEXIS 579 (Bankr. N.D. Tex. Mar. 5, 2023). Indeed, Judge Jernigan specifically addressed the meritless allegations raised by Dugaboy in its objection to re-assignment including its ludicrous allegations concerning Judge Jernigan's fictional novels. *Highland*, 2023 Bankr. LEXIS 579 at *50-52 ("The Presiding Judge's novels—again entirely fiction—are not about Mr. Dondero or the hedge fund industry in general … there are no characters or entities in her books that have been inspired by or

12

modeled after [Mr. Dondero and his controlled affiliate]"). Judge Jernigan also noted that Mr. Dondero's motion to recuse "[r]egrettably … contains several misstatements or partial descriptions of events … in several places that create misimpressions" and specifically addressed "[s]ome of the more problematic examples" of Mr. Dondero's mistruths.[28] Mr. Dondero (and Dugaboy) moved to appeal Judge Jernigan's rulings on their recusal motions. The District Court denied both leave to file an interlocutory appeal and the request for a writ of mandamus.[29]

32. Yet, despite these detailed findings, Dugaboy now seeks to have this Court determine Judge Jernigan is too biased to hear the Debtors' cases. That is improper. Mr. Dondero's desire for any judge but Judge Jernigan—notwithstanding her familiarity with, and all but certain involvement in, these cases—is its own brand of forum shopping and should not be countenanced.

33. Dugaboy is also wrong on the law. Judges "have the inherent power to transfer cases from one to another for the expeditious administration of justice." *U.S. v. Stones*, 411 F.3d 597, 598-99 (5th Cir. 1969); *see also Cook v. City of Dallas*, 683 F. App'x. 315, 322-23 (5th Cir. 2017). As evidenced by the Debtors' bankruptcy cases, Mr. Dondero's litigation crusade against HCMLP has metastasized to HCMLP's subsidiaries—subsidiaries that have no personnel of their own and therefore act only through HCMLP and its employees. Accordingly, it is highly likely that the Debtors' bankruptcy cases will affect the HCMLP Case and, wastefully and regrettably, spawn additional lawsuits against HCMLP and its employees, thus triggering the Gatekeeper. Judge Jernigan will be intimately involved in the Debtors' cases regardless of whether they are re-assigned to her. Re-assigning the Debtors' cases will therefore substantially aid judicial economy.

---

[28] *Id.* at *27-50.
[29] *Dondero v. Jernigan (In re Highland Cap. Mgmt., L.P.)*, 2022 U.S. Dist. LEXIS 23454 (N.D. Tex. Feb. 9, 2022); Civ. Action No. 3:21-cv-0879-K, Docket Nos. 41, 42.

13

## CONCLUSION

34. For the foregoing reasons, HCMLP respectfully requests that this Court grant (i) the Motion in its entirety and (ii) such other relief as this Court deems just and proper.

Dated: July 14, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (*pro hac vice* pending)
John A. Morris (*pro hac vice* pending)
Gregory V. Demo (*pro hac vice* pending)
Hayley R. Winograd (*pro hac vice* pending)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.,*

15